143 305
66a 153
143 305
85a 682

## THE MUTUAL BUILDING AND LOAN ASSOCIATION

### *v.*

## JAMES B. TASCOTT *et al.*

*Filed at Ottawa October 31, 1892.*

1. BUILDING AND LOAN ASSOCIATION—*amount of premium.* Where a member of a building and loan association bids twenty-five per cent premium for a loan of $10,000, if the association, by the report of its committee to whom the application for the loan was referred, and by its computation of the interest charged, and its bill to foreclose a mortgage given to secure the loan, treats the net amount of the loan at $8000, it can not claim in the foreclosure that the premium was to be $2500.

2. SAME—*when sum advanced is less than note and mortgage.* In such case, when only $3100 of the amount of the loan is advanced to the borrower, the mortgage should be held as security only for a sum bearing the same ratio to the $10,000, for which the bond and mortgage were given, as the $3100 advanced bears to the full amount which the borrower was entitled to receive as the net amount of the loan.

3. SAME—*statute allowing member to withdraw and receive amount paid by him, construed.* It is doubtful whether section 6 of the act relating to building and loan associations, which provides that any stockholder wishing to withdraw from the association shall have power to do so on giving certain notice, and that on such withdrawal he shall be entitled to receive the amount paid in by him, and such interest thereon, or such proportion of the profits thereon as the by-laws may fix, less fines and other charges, has any application to members who are borrowers. But if such association accepts of a borrower a surrender of his stock upon certain terms, it will be bound by those terms.

4. SAME—*section 10 of the act construed.* Section 10 of the act relating to building and loan associations, which authorizes a borrowing stockholder to pay his loan before it matures,—that is, before his stock becomes par,—and provides that if such payment be within less than eight years from the issue of his series of stock he shall be entitled, on payment of his loan, to be refunded one-eighth of the premium paid for every year of said eight years then unexpired, does not apply to a case where the association is compelled to foreclose a mortgage securing a loan for a failure to pay installments and interest.

5. APPEALS—*presumption in favor of action of lower court.* The Appellate Court being a court of superior jurisdiction, its judgments, on appeal or error, will be supported by the same intendments which

prevail in case of other superior courts. Error, to be availed of, must appear affirmatively upon the face of the proceedings, and if it is not so shown it will be presumed not to exist.

6. In order to sustain an assignment of error that the Appellate Court refused a motion to affirm the judgment or decree appealed from, for a failure of the appellant to file briefs in the time limited by a rule of the Appellate Court, it must appear, upon the record of that court, that the briefs were not filed in proper time. That fact can not be shown by affidavits filed in this court.

7. Same—*record tried by itself, alone.* A court, in its exercise of appellate jurisdiction, can act only upon the record duly certified by the clerk of the court from which the appeal is taken. Original evidence can not be heard. The record of the court from which the appeal is taken must be tried by itself, and by itself, alone.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Henry M. Shepard, Judge, presiding.

Mr. M. L. Raftree, for the appellant.

Mr. Azel F. Hatch, for the appellees.

Mr. Chief Justice Bailey delivered the opinion of the Court:

This was a bill in chancery, brought by the Mutual Building and Loan Association against James B. Tascott and others, to foreclose a mortgage given to the complainant by Frederick C. Tascott, now deceased. Answers and replications were filed, and the master, on reference to him, reported the amount due on said mortgage to be $4713.75. Exceptions to the master's report being overruled, a decree was entered approving said report, and ordering a sale of the mortgaged premises for the amount thus found due and costs. Said decree being taken to the Appellate Court by writ of error, was reversed, and that court having itself computed the amount due on the mortgage at $4118.40, remanded the cause to the court below with directions to enter a decree for the latter sum, with eight per cent interest on $3600 from March 5,

1889, the date of the original decree, added thereto.   From suid judgment of reversal the complainant has appealed to this court.

Complaint is made of the failure or refusal of the Appellate Court to enforce one of its own rules of practice at the instance of the complainant.   The clerk of that court has appended to the transcript of the record certified by him to this court, a copy of said rule, that portion of it material here being as follows:

"In all cases where the record shall have been filed with the clerk not less than twenty days before the first day of the term, and including all causes continued from a former term, the plaintiff in error or appellant shall file with the clerk his abstract and brief at least five days before the first day of the term.   *   *   *   In case of the failure of the plaintiff in error or appellant to file both his abstract and brief within the time above limited, the judgment or decree of the court below will, on the call of the docket, be affirmed."

The transcript of the record of the Superior Court appears to have been filed in the Appellate Court December 5, 1889, and the next succeeding term of the Appellate Court was appointed by law to be held on Tuesday, March 4, 1890.   If then it be admitted that said rule is properly before us, but as to which we express no opinion, the abstract and brief of the plaintiff in error, the appellees here, were required to be filed five days prior to March 4, 1890, and in default of their being so filed, at least unless sufficient cause to the contrary was shown, it became the duty of said court, on the call of the docket, to affirm the decree.   It appears from the record of the Appellate Court that on the 24th day of March, 1890, the cause was reached in the call of the docket, and was argued by counsel for the plaintiff in error, and taken under advisement by the court; and also that on the same day, the defendant in error by its counsel, moved the court to affirm the decree of the court below for want of briefs filed in the time provided

by said rule, and that the court also took that motion under advisement. The motion to affirm does not appear to have been directly passed upon, but on the 20th day of October, 1890, which was at the next subsequent term of said court, the judgment of said court was entered reversing said decree in manner and form above stated. It can not be doubted, however, that the judgment reversing was in effect a denial of the motion to affirm.

The appellant having assigned error upon the refusal of the court to sustain its motion to affirm, it is bound to sustain its assignment of error by the record, and we fail to find anything in the record, except the mere assertion of counsel in the motion itself, of any failure by the plaintiff in error to file its briefs in the Appellate Court within the time prescribed by said rule. The record being entirely silent on the subject, it will be presumed that said briefs were filed in apt time. The Appellate Court is a court of superior jurisdiction, and its judgments will be supported by the same intendments which prevail in case of other superior courts. Error to be availed of, must appear affirmatively upon the face of its proceedings, and if not so shown, it will be presumed not to exist.

But the appellant's counsel has sought to bring to our attention the facts upon which his assignment of error is based by his own original affidavit filed in this court. The practice which he has thus sought to adopt is one which can not be tolerated. This court, when exercising its appellate jurisdiction, can act only upon the record duly certified to this court by the clerk of the court from which the appeal is taken. Original evidence can not be heard. The record of the Appellate Court must be tried by itself and by itself alone, and unless there are errors manifest upon its face, the judgment of that court must be affirmed. There being an entire failure to show by the record that the defendant in error was entitled to have the decree affirmed under the rule, that assignment

of error must be overruled. The affidavit of the appellant's counsel will not be considered, as it is not before us.

The only question presented by the appeal now open for consideration is, whether, under the pleadings and proofs, the Appellate Court was justified in reversing the decree, and directing the entry of a new decree for a smaller sum. The bond, which the mortgage sought to be foreclosed was given to secure, was in the penal sum of $20,000, and said bond, after reciting that the obligor was a member of said Mutual Building and Loan Association, and had borrowed therefrom the sum of $10,000 upon one hundred shares of the capital stock of the association of a certain series, was conditioned that the obligor should pay to the association said sum of $10,000 in monthly installments of $50 each, from June 1, 1885, the date of said series, with interest thereon at the rate of eight per cent per annum, payable in monthly installments of $66.67 each, until the shares of said series should have attained the value of $100 each, and should pay all fines on said stock, and all taxes and assessments on the mortgaged premises, and keep the premises fully insured for the benefit of the association.

It appears from the evidence that the obligor subscribed for and obtained one hundred shares of the capital stock of the association, of said series, and that thereupon, on the 1st day of September, 1885, at a meeting of the directors of the association, he bid off and obtained the preference of loan of the moneys in the treasury of the association at a premium of twenty-five per cent; that he thereupon applied for an advance upon his one hundred shares of stock, offering as security therefor a mortgage on the premises now in question; that said application and proposed security were referred to a committee who reported favorably, their report commencing as follows: "Your committee to whom was referred the security offered by Mr. Fred C. Tascott for an advance of $8000 on one hundred shares, of the third series of the stock, bid

for by him on the 1st of September, 1885, at a premium of twenty-five per cent, report," etc.; that on the report of said committee said security was accepted, and that the applicant thereupon executed said bond and mortgage, those instruments being both dated September 17, 1885. In and by said mortgage it was provided that, in case of foreclosure, a $50 solicitor's fee might be taxed, and that for six month's default in the payment of any of the sums of money payable by the terms of said bond, said stock might be forfeited, and the loan declared due and the mortgage foreclosed.

Tascott seems to have applied for said loan in part for the purpose of discharging certain incumbrances on the mortgaged premises, and in part for the purpose of erecting certain buildings thereon, and that the arrangement between the parties was, that said money was to be advanced to Tascott as needed by him in discharging said incumbrances and in erecting said buildings. On the day after the execution of the bond and mortgage, the association advanced him $2100, and on the 9th day of October following the further sum of $1000, making $3100 in all. Nothing more was advanced, and Tascott died June 26, 1886, before beginning the erection of the contemplated buildings. On the 6th day of October, 1885, $250 was paid the association in discharge of the installments of $50 each, due by the terms of said bond, on the 1st day of June, July, August, September and October, 1885. Interest was also paid up to May 17, 1886. No further payments being made, the bill to foreclose said mortgage was filed February 10, 1888.

There seems to be no dispute that, as only $3100 of the money stipulated for was actually advanced to Tascott, the mortgage should be held as security only for a sum bearing the same ratio to the $10,000 for which the bond was given, as the $3100 advanced bears to the full amount which Tascott was entitled to receive as the net amount of the loan. The dispute is in relation to this latter sum, and involves the

question as to how the twenty-five per cent bid by Tascott should be computed. The appellant insists that said premium should be computed upon the entire $10,000, and that by such computation $7500 was the full amount of the advance to which Tascott was entitled, while the appellees claim that the premium should be computed only upon the amount of the advance, thus making the net amount of the loan $8000. By the former computation, the principal of the mortgage debt resulting from the advances actually made would be $4133.33, and that is the amount as reported by the master and found by the decree of the Superior Court, while by the latter it would be only $3875, and that seems to be its amount as found by the Appellate Court.

In support of the computation insisted upon by the appellant, we are referred to the provisions of the statute in relation to associations of this character, as it stood at the time said loan was made, which were as follows: "The board of directors shall hold such stated meetings, not less frequently than once in each month, as may be provided by the by-laws, at which the money in the treasury, if $100 or more, shall be offered for loan in open meeting; and the stockholder who shall bid the highest premium for the preference or priority of loan, shall be entitled to receive a loan of $100, less the premium bid, for each share of stock held by said stockholder." 1 Starr & Curtis' Stat. 631. It is insisted that the obvious construction of this statute required the premium to be computed upon the gross amount of the loan, and in this case required the premium to be computed upon the entire $10,000, thus making the net advance to which Tascott became entitled only $7500. Whether this is the true construction of the statute or not we are not called upon to determine, as the appellant, by its entire course of dealings with Tascott and his legal representatives, and by its pleadings and proofs in this suit, has, in our opinion, precluded itself from invoking that construction.

It seems to be the fair conclusion from all the evidence that the association, from the beginning, in its dealings with Tascott, recognized and adopted the other method of computation. As we have seen, the committee of the association to which the sufficiency of the security offered by Tascott was referred, in its report expressly recognized the amount of the advance to which Tascott became entitled by his bid of twenty-five per cent premium to be $8000. After the advance of $3100 both parties seem to have recognized the principal of the loan thus affected as being only $3875. Each month down to May, 1886, the association exacted and Tascott paid, as the monthly installment of interest due on said loan the sum of $25.84, that being just two-thirds of one cent in excess of monthly interest on $3875 at the rate of eight per cent per annum. The president of the association, in his testimony, states that the entire premium charged upon the loan was $2000 and that of this sum a rebate was made Tascott of $1250 thus in fact making the premium charged upon the money actually advanced him only $750.

Not only do these facts show that the association never claimed the right to compute the premium on the basis now insisted upon, but the averments of its bill are such as to preclude it from so doing. The bill, in stating the amount of the indebtedness remaining unpaid, alleges that there remains due to the association, after deducting all just credits and set-offs, the following sums: Amount of cash advanced, $3100; amount of premium earned on said loan, $500; interest due at date of bill, $648.11; fines, $58.80; solicitor's fee, $50; making a total of $4356.91. The amount of premium chargeable, after deducting the $250 paid, being only $500, it could have been only $750 in the aggregate, which is consistent only with the theory that the twenty-five per cent premium was to be computed upon the net and not upon the gross amount of the loan.

We are of the opinion then, whatever may be the true construction of the statute above quoted, that the association in this case is precluded, by its dealings with Tascott, and particularly by the allegations of its bill, from insisting that the principal of the indebtedness secured by the mortgage in question, originally exceeded the sum of $3850, and $250 having been paid thereon October 6, 1885, the principal since that date is only $3600. The Superior Court having adopted the finding of the master that the original principal was $4133.33, was in error, and the Appellate Court properly reversed the decree based upon that finding.

But we are unable to reach the same conclusion as did the Appellate Court as to the amount due. Assuming a principal of $3600, bearing eight per cent interest, the interest having been paid up to May 17, 1886, there was due, principal and interest, May 5, 1889, the date of the decree of the Superior Court, the sum of $4406.40. Add to this the $50 solicitor's fee for which the mortgage stipulates, and $11.40 of fines which the appellees admit were properly imposed, and the total amount due at that date was $4467.80.

The Appellate Court, in reaching the amount for which it directed a new decree to be entered, seems to have adopted a computation submitted by the counsel for the appellees, in which a credit of $375 upon the premium charged was claimed, the appellees having tendered and the appellant having accepted a surrender of the shares of stock held by the appellees at the hearing.

We see no ground for the allowance of this credit. The surrender of said stock however was made and accepted on the condition that the appellees should be credited on whatever amount was found to be owing, with the $250 paid on said stock, and interest thereon, as provided by statute. The only statutory provision on the subject, so far as we are advised, is found in section 6 of the act in relation to associations of this character, that provision being, that any stock-

holder wishing to withdraw from the association, shall have power to do so, by giving certain notice, and that on such withdrawal, he shall be entitled to receive the amount paid in by him, and such interest thereon, or such proportion of the profits thereon, as the by-laws may determine, less fines and other charges. 1 Starr & Curtis' Stat. 630.

It is doubtful whether this statute has any application to members who are borrowers, but as the association saw fit to accept the surrender of the stock in question upon certain terms, it is undoubtedly bound by the terms thus agreed upon. But in the computation which we have already made, the appellees have been given the benefit of the stipulated credit. The $250 has been applied as a credit upon the principal of the indebtedness, as of the date it was made, thus cancelling that amount of the principal, and relieving the borrower from liability to pay interest thereon. We see no ground for any further application of said credit, nor for the giving of any other credit growing out of the surrender and acceptance of said stock.

Section 10 of said statute, to which some reference seems to be made, has, in our opinion, no application. That applies only to borrowing stockholders who, of their own motion, elect to pay their loans before they mature, that is, before their stock becomes par. In those cases, if the payment is made within less than eight years from the issue of their series of stock, they become entitled, on paying their loans, to be refunded one-eighth of the premium paid for every year of said eight years then unexpired. The appellees here are not seeking to pay their loan before maturity. On the other hand, they were nearly or quite two years in default. The monthly installments on principal were paid only up to and including the one maturing October 1, 1885, and the interest was paid only up to May 17, 1886, while the bill to foreclose was not filed until February 10, 1888. The association, after declaring the entire amount secured by the mortgage due, as

it had a right by the terms of the mortgage to do after six months default, commenced proceedings to foreclose the mortgage. Clearly the rebate of portions of the premium required to be made to stockholders paying before maturity is a matter wholly foreign to anything appearing in this record.

As we understand the evidence then, there was due to the association on said mortgage on the 5th day of March, 1889, the date of the decree of the Superior Court, the sum of $4467.80. Of this sum $3600 was principal, and bearing interest, by the terms of the mortgage, at the rate of eight per cent per annum. The judgment of the Appellate Court, so far as it reverses the decree of the Superior Court will be affirmed, but the directions accompanying the remanding order will be set aside, and the cause will be remanded to the Superior Court with directions to enter a decree in favor of the complainant for said sum of $4467.80, together with interest on said sum of $3600 from March 5, 1889, to the date of such new decree, at the rate of eight per cent per annum, the appellees to pay the costs of this court, and the appellant to pay the costs of the Appellate Court.

*Judgment affirmed in part and in part reversed.*